## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14–CR-30152-1-NJR** |
| | ) | |
| | ) | |
| **AYIKO PAULETTE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

This matter is before the Court on eight pre-trial motions filed by Defendant Ayiko Paulette. The Court has carefully reviewed each motion along with the Government's responses and determined that a hearing is only necessary for two of the motions: the Motion to Suppress Statements (Doc. 225) and the Motion to Suppress Physical Evidence (Doc. 226). The remaining six motions, each of which is discussed in turn below, will be decided based on the parties' submissions and without a hearing.

**A. Motion to Request Advanced Authorization for Investigative, Expert, and Other Services and to Authorize Association with Attorney from an Outside Law Firm (Doc. 219)**

Mr. Paulette's attorney, John Rogers, has asked the Court for authorization to hire an investigator at the Government's expense and for authorization to associate with an attorney from a separate law firm.

The Court turns first to the request to hire an investigator. In support of his request, Mr. Rogers states: "Based on past experience in similarly complex cases where a

drug conspiracy has been alleged, undersigned counsel estimates that a significant number of hours of investigative resources will be needed to provide adequate representation by interviewing relevant fact witnesses and securing their attendance at trial." (Doc. 219). Mr. Rogers is also seeking advance approval to compensate the investigator in excess of the statutory maximum of $2,400. Specifically, Mr. Rogers estimates that compensation for the investigator may reach up to $5,000.

18 U.S.C. § 3006A(e)(1) authorizes investigative expenditures on behalf of indigent defendants when necessary for adequate representation. But requests for investigative services are not simply rubber-stamped. The Court must "scrutinize these requests to properly safeguard precious taxpayer funds . . . [and] to prevent taxpayer money from being wasted on unreasonable or unnecessary activities by court appointed defense counsel." *United States v. Mosley*, 779 F. Supp. 2d 398, 400 (D.N.J. 2011).

In this case, the explanation provided by Mr. Rogers is insufficient for the Court to certify that an investigator is necessary for adequate representation and/or to find that compensation over twice the statutory maximum is justified. The Court needs to know more about what the investigator will do; "interviewing fact witnesses" is not enough. For example, who are these fact witnesses; how many are there; where are they located; will the interviews be by phone or in-person; and why are the interviews necessary—meaning what does counsel hope to achieve by speaking with these witnesses? The Court also wants to know why an investigator is necessary; that is, why can counsel not perform the investigative work himself? The Court needs a more specific estimate as to how many hours the investigation will likely take; "a significant number"

is not descriptive enough. Finally, the Court needs to know the payment arrangement with the investigator (*i.e.,* per diem or per hour) and the payment rate. Consequently, the request for authorization to obtain an investigator is denied. The denial is without prejudice, and Mr. Rogers can refile a request that meets the above requirements. If he does not want to share with the Government the details requested by the Court, Mr. Rogers is reminded that the motion can be filed *ex parte*.

The Court next turns to the request to associate with an attorney from a separate law firm. In particular, Mr. Rogers wants to associate with a legal writing and research attorney, Michael Meresak of Meresak Law, LLC, in order to obtain assistance with motion drafting and trial preparation. The Court understands this request to mean that Mr. Meresak would be compensated by Mr. Rogers, who would then include such payment in his itemized claim for compensation from the Court. The Government opposes this request.

The Guidelines for Administering the CJA permit appointed counsel to claim compensation for services furnished by counsel who is not a partner or associate, within the maximum compensation allowed by the Criminal Justice Act, so long as they receive prior authorization. Guide to Judiciary Policy, vol. 7, Part A, § 230.53.10(b).

In support of his request, Mr. Rogers explains that his firm regularly uses Mr. Meresak to prepare pretrial motions and conduct research and writing in complex cases. Mr. Rogers goes on to say that he believes that Mr. Meresak's involvement in this case will be beneficial to Defendant Paulette in preparing pre-trial motions and in preparing for trial.

Again, this explanation is not sufficient to allow the Court to make an informed judgment as to whether or not to grant prior authorization. The CJA system is designed for indigent defendants to be represented by a single attorney. *United States v. Mosley*, 779 F. Supp. 2d 398, 400 (D.N.J. 2011). The system allows that attorney to seek the assistance of associates and partners only to a limited extent. *See* § 230.53.10(b). Mr. Rogers is a highly capable attorney in a firm with approximately fourteen total attorneys, some of whom have already been utilized in this matter. There is no indication as to why yet another attorney outside of Mr. Rogers's firm is also necessary. The Court will not authorize Mr. Rogers to have another attorney act in his stead without explaining why it is necessary, why he cannot perform the work himself, and whether it will result in an overall savings in the cost of defending this case. *See United States v. Alves*, 317 F. Supp. 2d 65, 69 (D. Mass. 2004) ("In my judgment, requests for prior authorization to obtain the services of other counsel . . . need to be specific as to (a) the need for such services, (b) the extent of the work which other counsel is likely to have to perform, and (c) the estimated cost of the services.")

Consequently, the request for authorization to associate with an outside attorney is denied. The denial is without prejudice, and Mr. Rogers can refile a request that meets the above requirements.

**B.  Motion to Dismiss Count 14 of Superseding Indictment (Doc. 221)**

Mr. Paulette has asked the Court to dismiss Count 14 of the Superseding Indictment because the language of the indictment lacks sufficient factual particulars to put him on notice of the charge against him. The Government opposes Mr. Paulette's

motion arguing that the language of the Superseding Indictment is legally sufficient (Doc. 242). The Government further argues that even if the language is not sufficient, dismissal is not the proper remedy; instead, the Court should order the Government to file a bill of particulars (Doc. 242).

In order for an indictment to be constitutionally sufficient and satisfy Rule 7(c)(1) of the Federal Rules of Criminal Procedure, it must fulfill three distinct functions. *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). First, it must state the elements of the crime charged; second, it must inform the defendant of the nature of the charge so he may prepare a defense; and third, it must allow the defendant to plead the judgment as a bar against future prosecutions for the same offense." *Smith*, 230 F.3d at 305; *accord United States v. Harvey*, 484 F.3d 453, 456 (7th Cir. 2007) (quoting *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997)).

Mr. Paulette argues that the indictment fails to satisfy the second function—it is devoid of specific allegations as to the conduct engaged in, and thus it fails to give him notice of what specifically he must be prepared to meet at trial. He claims that he is left to guess what conduct, occurring over a period of longer than one month, might constitute obstruction of justice. The Court disagrees.

"[A]n indictment must do more than recite the statutory elements," but that "does not mean that the government is required to provide 'every factual nugget necessary for conviction.'" *United States v. Fassnacht*, 332 F.3d 440, 445 (7th Cir. 2003) (quoting *Smith,* 230 F.3d at 306). The indictment need only "provide some means of pinning down the specific conduct at issue." *Smith,* 230 F.3d at 306. In other words, the

indictment must "provide enough factual information to enable the defendants to identify the conduct on which the government intends to base its case." *Fassnacht*, 332 F.3d at 446.

Here, Count 14 charges Ayiko Paulette and Loletha Eckford with Conspiracy to Obstruct Justice in violation of 18 U.S.C. §§ 1512(c) and 1512(k). The Superseding Indictment alleges in relevant part that:

> Between on or about August 29, 2014 and October 9, 2014 in Marion County . . . Ayiko L. Paulette . . . and Loletha Eckford . . . did knowingly and intentionally combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to corruptly attempt to obstruct an official proceeding, to wit: United States of America v. Ayiko Paulette, et al., case No. 14-30152-NJR in the United States District Court for the Southern District of Illinois, in violation of [18 U.S.C. §§ 1512(c)(2) and (k)].

Reading the indictment, Mr. Paulette knows that he is charged with obstruction of justice for conspiring with Loletha Eckford to interfere with the existing criminal case against him over approximately a six week period from August 29 to October 9, 2014. That information "sufficiently narrow[s] the category of behavior" to allow him to conduct his own investigation and prepare his defense. *Smith*, 230 F.3d at 306. It is not necessary for the indictment to also identify the exact date, time, place, and specifics of his actions.

Perhaps the best indication that the indictment contained sufficient particulars is that Loletha Eckford, his co-defendant in Count 14, understood exactly what conduct they engaged in and has already pleaded guilty to it (Doc. 259). Furthermore, Eckford's stipulation of facts lays out the factual specifics of the obstruction charge (Doc. 260). Thus, the information necessary for Mr. Paulette's defense can be obtained through

"some other satisfactory form." *United States v. Fassnacht*, 332 F.3d 440, 447 n.2 (7th Cir. 2003) (citing *United States v. Canino* 949 F.2d 928, 949 (7th Cir. 1991)). Accordingly, it is not necessary to dismiss Count 14 as Mr. Paulette contends. In fact, there is not even a need to order the Government to file a bill of particulars. Accordingly, Mr. Paulette's motion is denied.

### C. Motion for Disclosure of Confidential Informants, Informers, and Cooperating Individuals (Doc. 222)

Mr. Paulette has asked the Court to order the Government to identify the confidential informants referenced in the applications for search warrants and to provide impeachment information on the informants. In response to the motion, the Government states that all of the requested information was provided to Mr. Paulette on March 9, 2015 (Doc. 243). Mr. Paulette did not reply or otherwise indicate that there was a problem with the materials that the Government produced. Accordingly, this motion can be denied as moot.

### D. Motion to Severe Defendants (Doc. 224)

Mr. Paulette has asked the Court to sever his trial from the other ten co-defendants. He argues that a number of problems could arise, and he could be severely prejudiced if his trial is not severed. First, a joint trial may violate his rights to confront non-testifying co-defendants. Second, the jury may be unable to isolate the evidence presented against each co-defendant and may erroneously impute the guilt of one co-defendant onto him. And third, his co-defendants may raise an antagonistic defense, and the jury's acceptance of that defense may preclude acceptance of his defense.

"Multiple defendants may be tried together 'if they are alleged to have participated . . . in the same series of acts or transactions, constituting an offense or offenses.'" *United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003) (citing FED. R. CRIM. P. 8(b)). "In fact, 'there is a preference in the federal system for joint trials of defendants who are indicted together [because] . . . [t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Souffront*, 338 F.3d at 828 (quoting *Zafiro v. United States,* 506 U.S. 534, 537 (1993)). "When defendants have been properly joined under Rule 8(b), 'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Souffront*, 338 F.3d at 828 (quoting *Zafiro*, 506 U.S. at 539).

Not all of Mr. Paulette's arguments are sound. *See, e.g., United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002) ("Even a showing that two defendants have 'mutually antagonistic defenses,' that is, that the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right." (quoting *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001))). But the Court need not conduct an in-depth analysis of his arguments just yet because, at this point, Mr. Paulette's motion is premature. His arguments are based purely on speculation. And given that the parties do not foresee going to trial before Fall 2015, some, if not all, of Mr. Paulette's arguments may be moot by then. Additionally, even if all ten of the remaining

co-defendants do proceed to trial, obviously they will not be tried at the same time because the courtroom simply is not big enough to accommodate them all.

Accordingly, Mr. Paulette's motion to sever is denied without prejudice.

## E.  Motion to Suppress Identification (Doc. 223)

This motion relates to an out-of-court identification of Mr. Paulette by a woman named Lucille Brim. Ms. Brim was arrested on November 30, 2011. In a post-arrest interview, she admitted that she accompanied her friend, Shannon Lynch, to deliver nine ounces of cocaine to Lynch's friend. Ms. Brim said the cocaine seized came from an individual named "Jay," who had been her source of cocaine for the previous six months. She was shown a photo lineup of "ten to fifteen pictures," and she picked "Jay" out of a lineup by selecting the photo of Mr. Paulette.

Mr. Paulette claims that the circumstances surrounding the out-of-court identification were so inherently suggestive and conducive to mistaken identification as to violate his due process rights. Therefore, according to Paulette, any testimony regarding Ms. Brim's out-of-court identification should be suppressed. Mr. Paulette further claims that any in-court identification would be tainted by the out-of-court identification procedures, so even an in-court identification should be barred. He does not state any facts or provide any evidence to back up his claim because he plans to do that "at the motion hearing in this case."

"A defendant who seeks to suppress evidence bears the burden of making a prima facie showing of illegality." *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992) (citing *United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988)). "Reliance on

vague, conclusory allegations is insufficient." *Randle*, 966 F.2d at 1212. "A defendant must present 'definite, specific, detailed, and nonconjectural facts' that justify relief before a district court will grant a suppression hearing." *Id.* (quoting *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir. 1986)).

Here, Mr. Paulette's skeletal argument is really nothing more than a conclusory assertion. He did not provide any specific facts that were in dispute or that suggested the out-of-court identification violated his constitutional rights. As such, he has not said enough to necessitate a hearing or warrant a favorable ruling. *See United States v. Oliver*, 142 F. Supp. 2d 1047, 1051 (N.D. Ill. 2001) ("Some motions are so sketchy or bare-bones that it is apparent that they are made without any substantial basis but rather in the hope of striking pay dirt somewhere or for use as a discovery tool; denial of a hearing is likewise appropriate in these cases.") The motion is denied.

## F.  Motion to Suppress Precision Location Information (Doc. 220)

Mr. Paulette has asked the Court to suppress the precision location information ("PLI") that was obtained from his cell phone with the number 314-717-7343. He argues that the search warrants were not supported by probable cause and that the agents exceeded the scope of the warrants in executing them.

There were three search warrants issued that authorized law enforcement officials to gather PLI from the cell phone. The application for the first search warrant was based on information received from a confidential informant and a controlled drug buy with that informant. The first search warrant was issued on May 8, 2014, and the agents began receiving PLI on May 8 at 7:15 p.m. They stopped receiving PLI pursuant

to the first warrant on June 6. The second warrant was issued on June 6, 2014. The application was based on the same information from the informant in the first warrant application, as well as a second drug buy by the informant, and information about Mr. Paulette's habits and residence that had been developed pursuant to the first search warrant (*see* Doc. 240-1, pp. 1–8). The agents began receiving PLI pursuant to the second warrant on June 9 at 11:29 a.m., and they stopped receiving PLI on July 7 at 11:47 p.m. The third search warrant was issued on July 15, 2014. The agents began receiving PLI pursuant to the third warrant on July 21 at 9:04 p.m. and stopped receiving PLI on August 16 at 7:54 p.m.

Mr. Paulette first argues that the search warrants authorizing the collection of PLI were unsupported by probable cause because the information supporting the warrant applications was not reliable. He points out that the information came from a single informant, and the application failed to provide any information reflecting on the informant's credibility or any corroboration by law enforcement. The Court disagrees.

Whether an informant's tip could constitute sufficient probable cause to support a warrant is based on a "totality-of-the-circumstances" analysis. *Illinois v. Gates*, 462 U.S. 213 (1983). There are a number of relevant factors to this analysis, including "(1) the extent of police corroboration of the informant's information, (2) whether the informant's information was based on personal observations, (3) the amount of detail provided by the informant, (4) the amount of time between the events reported by the informant and the warrant application, and (5) whether the informant personally appeared before the issuing judge to present the affidavit or testimony." *United States v.*

*Olson*, 408 F.3d 366, 370 (7th Cir. 2005).

Here, the informant's information was based on his own personal experience buying drugs from Mr. Paulette, as opposed to something he heard. The informant's information was detailed in that he explained the size of his purchases, the frequency of his purchases, and Mr. Paulette's preferred method of communication. In particular, the warrant application indicates that the informant told agents in April 2014 that he had been purchasing two to three ounces of cocaine from Mr. Paulette approximately two to three times per week since January 2014, and he also purchased heroin on more than one occasion. The informant also said that he texted Mr. Paulette at the 314 number to arrange a drug buy because Paulette preferred texts over phone calls. The informant also showed the agents some of the text messages between him and Mr. Paulette.

Additionally, the agents corroborated the informant's information by arranging a controlled buy, which was monitored and recorded by the agents. The warrant application indicates that on May 7, 2014, in the presence of the agents, the informant sent a text to the 314 number saying he wanted some cocaine. The informant received a response arranging a meet up a short time later. The agents then observed Mr. Paulette arrive at the meet up place, and audio confirmed that Paulette was engaged in conversation with the informant. The informant received from Paulette a substance that was later confirmed to be cocaine.

Therefore, while the informant's reliability was not explicitly described in the application, it can be inferred from his statements, and it was also corroborated by law enforcement. Thus there was a substantial basis for the issuing judge to conclude that

probable cause existed.

Even if the warrant was unsupported by probable cause, it would be saved by the good faith exception. The agent's decision to apply for a warrant is *prima facie* evidence of good faith. *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007). A defendant can rebut the presumption of good faith only by showing that (1) the issuing judge abandoned his detached, neutral role, (2) that the agent was dishonest or reckless in preparing the affidavit, or (3) that the warrant was so lacking in probable cause as to render the agent's belief entirely unreasonable. *Id.* Mr. Paulette made no attempt to rebut the presumption of good faith. Accordingly, his argument that the PLI must be suppressed because the warrant was unsupported by probable cause must be denied.

Mr. Paulette next argues that the agents exceeded the scope of the warrant. He argues that the second search warrant expired on July 6, 2014, but agents obtained PLI from July 7 showing that Mr. Paulette was at Union Station in Dallas and later in North Little Rock, Arkansas. He claims that he was "arrested" at the Amtrak station in St. Louis on July 8. Mr. Paulette argues that because agents exceeded the scope of the limited authority granted by the search warrant by seizing PLI after July 6, his detention on July 8 at the Amtrak in St. Louis, as well as his statements and all evidence seized that day, must be suppressed as fruit of the agent's illegal seizure of PLI.

Evidence that is obtained as a result of an illegal search or seizure is fruit of the poisonous tree, and "it must be excluded unless the government can show that it was obtained as a result not of the illegality, but rather 'by means sufficiently distinguishable to be purged of the primary taint.'" *United States v. Swift*, 220 F.3d 502, 507 (7th Cir. 2000)

(citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). Illegally obtained evidence may be purged of the taint "by a finding that it was discovered by an independent source, that it would inevitably have been discovered without the unlawful search, or that its discovery is sufficiently distant in causal connection from the illegal search so as to attenuate the connection between the two." *Swift*, 220 F.3d at 507.

Here, Mr. Paulette is essentially arguing that, *as a result* of the police illegally seizing the PLI on July 7, he was stopped on July 8 in St. Louis, he gave statements to agents, and evidence was seized from his co-defendants. The Court disagrees.

As the Government notes, the agents had a wealth of other information, developed wholly independent of the July 7th PLI, that gave them sufficient reason to believe that Mr. Paulette and his co-defendants were travelling from Dallas to St. Louis. Specifically, the agents received PLI on July 4 that Mr. Paulette was in St. Louis. They received PLI on July 5 that he was at various spots in Fort Worth, Texas, including the Westin Dallas Fort Worth Hotel. They received PLI on July 6 that he was in Arlington, Texas, at the Crown Plaza Hotel. On July 7, an ATF agent in Dallas spoke with hotel employees at the Westin and the Crowne Plaza and confirmed that Mr. Paulette and his co-defendants had stayed at those hotels. Employees of the Crowne Plaza told the agent that Mr. Paulette and the others had hastily left the hotel in taxis bound for the Dallas downtown train station. Agents then contacted Amtrak and learned that Mr. Paulette and his co-defendants were aboard the Amtrak "Texas Eagle" bound from Dallas to St. Louis, Missouri.

Thus, the PLI that was illegally gathered on July 7 simply confirmed what the

agents already knew—Paulette and his co-defendants were en route from Dallas to St. Louis. Even without the July 7th PLI, agents certainly knew enough that Paulette and his co-defendants would have been inevitably stopped. Therefore, assuming that the seizure of the PLI on July 7 was illegal, it does not warrant suppressing the stop of Paulette and his co-defendants or any other evidence that flowed from that stop. To do so would put the police in a worse position than they would have been in if no police error occurred, which contravenes the goal of the exclusionary rule. *Swift*, 220 F.3d at 507 (The goal of the 'poisonous tree' doctrine is to ensure that the prosecution is not put in a better position by means of the illegality, but the countervailing consideration is that the prosecution must not be put in a worse position."); *accord United States v. May*, 214 F.3d 900, 906 (7th Cir. 2000).

Accordingly, the argument that the evidence must be suppressed because the agents exceeded the scope of the warrant must be denied.

## CONCLUSION

1. Motion to Request Advanced Authorization for Investigative, Expert, and Other Services and to Authorize Association with Attorney from an Outside Law Firm (Doc. 219) is **DENIED** without prejudice.

2. The Motion to Suppress Precision Location Information (Doc. 220) is **DENIED.**

3. The Motion to Dismiss Count 14 of Superseding Indictment (Doc. 221) is **DENIED.**

4. The Motion for Disclosure of Confidential Informants, Informers, and Cooperating Individuals (Doc. 222) is **DENIED as moot.**

5. The Motion to Suppress Identification (Doc. 223) is **DENIED.**

6. The Motion to Severe Defendants (Doc. 224) is **DENIED without prejudice**.

7. An evidentiary hearing on the remaining motions—the Motion to Suppress

Statements (Doc. 225) and the Motion to Suppress Physical Evidence (Doc. 226)—will be held on May 13, 2015, at 9:00 a.m. in front of the undersigned. Non-frivolous argument related to the Court's rulings in this Order can be taken up at that time as well.

**IT IS SO ORDERED.**

**DATED:   April 28, 2015**

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**